**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

---

SHAT ACRES HIGHLAND CATTLE, LLC,
a Vermont limited liability company, JANET
STEWARD, an individual, and RAY
SHATNEY, an individual,

          Plaintiffs

v.

AMERICAN HIGHLAND CATTLE
ASSOCITION (AHCA), a South Dakota
nonprofit corporation with its principal place
of business in Brighton, Colorado,
JACQUELYN CHOTKOWSKI, individually
and as a member of AHCA, LAURA
MCDOWELL-MAY, individually and as a
member of AHCA, SPRING FLIGHT FARM,
LLC, a New York limited liability company,
and SEAWIND MEADOWS, LLC, a
Massachusetts limited liability company,

          Defendants.

DOCKET NO. 1:21-CV-01348-WJM-NYW

---

**DEFENDANTS' AMENDED MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2),**
**(b)(6)**

---

       COME NOW, Defendants, American Highland Cattle Association ("AHCA"), Jacquelyn

Chotkowski ("Chotkowski"), Laura McDowell-May ("McDowell-May"), Spring Flight Farm,

LLC ("Spring Flight"), and Seawind Meadows, LLC ("Seawind") (collectively, "Defendants"), by

and through counsel, Treece Alfrey Musat, P.C., hereby submit their Motion to Dismiss pursuant

to the Federal Rules of Civil Procedure ("F.R.C.P.") 12(b)(2) and (b)(6), as follows:

     **I.**     **CERTIFICATION OF D.C.COLO.L.CivR 7.1A CONFERRAL**

Defendants' counsel certifies they conferred Plaintiffs' counsel, and was informed Plaintiffs oppose the relief sought herein.  Mediation and communications occurred to cure the deficiencies and defects within Plaintiffs' Complaint; yet Plaintiffs were unwilling to redraft, stipulate, or amend the Complaint.

## II.      INTRODUCTION

### A.      SUMMARY OF THE FACTS ALLEGED IN PLAINTIFFS' COMPLAINT

AHCA is a small nonprofit organization dedicated to preserving the integrity of Highland Cattle, maintaining an American breed registry, and assisting members in creating value for their animals.  Compl. ¶ 49.  It also produces a newsletter/magazine, entitled *The Bagpipe*, and organizes and sponsors "point shows," where competitors show their Highland cattle to receive awards. Compl. ¶¶ 53, 54, 57.  Finally, it assists and sponsors the National Western Stock Show ("NWSS") in Denver, Colorado, which is the biggest Highland Cattle show in the nation.  Compl. ¶ 61.

Chotkowski, McDowell-May, Spring Flight, and Seawind (collectively, "Non-Colorado Defendants") are all members of AHCA.  Compl. ¶¶ 11-17.   Chotkowski served as President around 2009 through June 2010.  Compl. ¶¶ 86, 98, 120-126, 127.   During Chotkowski's presidency, AHCA edited its rules, implementing a Long-Range Plan ("LRP"), intent on supporting, but not requiring, the traditional manner of grooming for its point shows. Compl. ¶¶ 86-92, 102-115.   During this time, Plaintiffs continually were successful implementing the traditional manner.  Compl. ¶¶ 85-92.

Chotkowski also served as the Quality Highland Beef ("QHB") Program Chair and editor for *The Bagpipe*. McDowell-May served as President around 2018.  Compl. ¶¶ 177-226.  Plaintiffs were also contributors and members to AHCA. Compl. ¶ 37. Janet Steward ("Steward") served as

2

the Beef Marketing Committee ("BMC") Program Chair from 2011-on.  Compl. ¶¶ 128-129.  The

BMC garnered success, while the QHB seemingly remained its competitor.  Compl. ¶¶ 129-133.

Ray Shatney served as a member of AHCA's Board of Directors.

Beginning in 2015, Steward presented BMC reports to AHCA members at meetings,

conventions, and through *The Bagpipe*.  Compl. ¶ 134.  In the meetings, Chotkowski would

interrupt Steward through verbal comments, by leaving the room, or by turning her chair.  Compl.

¶¶ 134-141.  During the end of March/beginning of April in 2015 timeframe, Plaintiffs allege

AHCA's then president,  Deb Nelson, notified them they were being reprimanded as

troublemakers.  Compl. ¶¶ 142-150.  During an April 2015 meeting, Chotkowski and McDowell-

May threatened to bring criminal charges against Plaintiffs, which culminated in an AHCA Ethics

Committee investigation launched in May 2015.  Compl. ¶¶ 149, 154-162.

In May 2018, Plaintiffs allege McDowell-May, AHCA's then president, made false

allegations of Plaintiffs' "ethics violations" to AHCA's Ethics Committee, resulting in an

investigation.  Compl. ¶¶ 177-226.  The complaints related to a Facebook post by Steward and

violations during a livestock show.  *Id.*  Throughout 2018, Plaintiffs heard through the grapevine

and different AHCA staff/members of conflicting accounts, as to whether an investigation was to

proceed, and made unsuccessful attempts to request documentation related to the complaints.

Compl. ¶¶ 177-226.

Plaintiffs initially filed this matter on April 22, 2020 in U.S. District Court for the District

of Vermont.  The complaint was dismissed on January 13, 2021, for lack of personal jurisdiction

over the Defendants.  Compl. ¶ 1; *see also Shat Acres Highland Cattle, LLC v. Am. Highland

Cattle Ass'n*, No. 2:20-cv-62-jmc, 2021 WL 2125357 (D. Vt. Jan. 13, 2021).

**B.      ADDITIONAL JURISDICTIONAL FACTS CONCERNING F.R.C.P. 12(b)(2)**

Chotkowski is a New York citizen and managing member of Spring Flight, which is organized and has its principal place of business in New York.   Exhibit A, Affidavit of Chotkowski, ¶¶ 3-6 [hereinafter Ex. A].   Chotkowski and Spring Flight do not and have not regularly conducted business or owned property in Colorado. Ex. A ¶¶ 5-6, 12. Chotkowski's only physical presence or contact with Colorado occurs in her attendance at the NWSS, where she shows cattle on behalf of Spring Flight, and has occasionally consigned animals for that sale.   Ex. A ¶¶ 7-8.   Spring Flight sells, ships, and purchases cattle, semen, and embryos nationwide, and stores them within facilities not in Colorado.   Ex. A ¶¶ 9-13.   Further, it does not have records of any semen or embryos sold, shipped, or purchased in/to Colorado.  *Id.*

McDowell-May is a citizen of Massachusetts and managing member of Seawind, which is organized and has its principal place of business in Massachusetts.   Exhibit B, Affidavit of McDowell May, ¶¶ 3-6 [hereinafter Ex. B].   Neither McDowell-May nor Seawind do or have regularly conducted business or owned property in Colorado. Ex. B ¶¶ 5-6, 10.   McDowell-May's only physical presence or contact with Colorado occurs in her attendance at the NWSS.   Ex. B ¶ 7.   McDowell-May's daughters and Seawind have shown animals at the NWSS, where they have occasionally consigned animals to that sale.   Ex. B ¶¶ 8-9. McDowell-May's daughters and Seawind have occasionally purchased and sold cattle through auction, which is streamlined nationally. Ex. B ¶ 9.

### III.      ISSUES

The primary issues arising from Plaintiffs' Complaint are: (1) whether Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2), as

related to claims against the Non-Colorado Defendants; and (2) whether Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6), as related to claims against all the Defendants.  The suggested answer for each issue is in the affirmative, as further discussed in the Argument section below.

## IV.   ARGUMENT

### A.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO F.R.C.P. 12(b)(2) AGAINST THE NON-COLORADO DEFENDANTS.

#### 1.   The applicable standard for review for a F.R.C.P. 12(b)(2) Motion.

Federal courts may "only exercise personal jurisdiction over a nonresident defendant where both state law and federal due process are satisfied." *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1198 (D. Colo. 2015).  "Colorado's long arm statute is coextensive with constitutional limitations[;]" accordingly, the relevant inquiry is whether personal jurisdiction "comports with due process, a question of federal law." *Id.*

For this inquiry, the plaintiff bears the "burden to demonstrate [personal] jurisdiction over each [d]efendant" and "need only make a *prima facie* showing . . . to defeat [a] motion to dismiss." *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1229 (D. Colo. 2009).  A *prima facie* showing occurs when "the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant." *Warad West, LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1297 (D. Colo. 2015).  If established, the defendant must show other considerations render jurisdiction unreasonable. *Id.*  However, "the weaker the plaintiff's showing [of] minimum contacts, the less of a burden on the defendant's showing of unreasonableness. *Allison v. Wise*, 621 F. Supp. 2d 1114, 1118 (D. Colo. 2007).  Further, during the court's review, it must "accept the well-pleaded allegations . . . as true," with "factual conflicts . . . resolved in the plaintiff's favor." *Warad W.*,

5

119 F. Supp. 3d at 1297.  However, conclusory, implausible, or speculative facts are not entitled to any presumption of truth.  *Id.*

Allegations are only "taken as true to the extent they are uncontroverted by defendant's affidavits."  *Fairbrother v. Am. Monument Found., LLC*, 340 F. Supp. 2d 1147, 1151 (D. Colo. 2004).  Affidavits submitted in opposition "to [a] motion to dismiss for lack of personal jurisdiction must comply with the requirements of [F.R.C.P.] 56(e)" and "must contain personal knowledge, admissible facts, and [an] affirmative showing of competency."  *Id.* at 1151-52.

**2.    Analysis of Personal Jurisdiction requires Plaintiffs' Complaint be dismissed.**

*i.    There are no facts supporting General Jurisdiction.*

General jurisdiction may exist "for any claim, whether arising from activities in the state or not, 'based on the defendant's general business contacts with the forum state.'"  *Grynberg*, 666 F. Supp. 2d at 1230 (*quoting OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  However, "because general jurisdiction is not related to the events giving rise to the suit," the minimum contacts test is more stringent, "requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."  *Id.*  Thus, the defendant must be "essentially at home in the forum state."  *Faber v. Townsend Farms, Inc.*, 54 F. Supp. 3d 1182, 1186 (D. Colo. 2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Considerations of a defendant's contact with a forum state as "continuous and systematic" are: (1) whether business is solicited in the state through a local office or agents; (2) whether agents are sent into the state on a regular basis to solicit business; (3) whether through advertisements, listings or bank accounts, the defendant holds itself out as doing business in the

forum state; and (4) the volume of business conducted in the state.  *Grynberg*, 666 F. Supp. 2d at 1230.

Here, the Non-Colorado Defendants do not have sufficient contacts with Colorado that are so "continuous and systematic" to justify general jurisdiction.  The Non-Colorado Defendants are respectively located in New York and Massachusetts, where they primarily conduct their businesses.  Ex. A ¶¶ 3-6; Ex. B ¶¶ 3-4.  They do not have any offices, facilities, or property in Colorado.  Ex. A ¶¶ 5-6; Ex. B ¶¶ 5-6.  The only contact had with Colorado is through their memberships with AHCA, their attendance and participation in the NWSS once a year, and their participation in the sale.  Ex. A ¶¶ 8-9; Ex. B ¶¶ 7-9.  However, these occasional transactions are insufficient to show the Non-Colorado Defendants are "essentially at home" in Colorado.[1]  Thus, general jurisdiction has not been established.

### ii.  *There are no facts supporting Specific Jurisdiction.*

Specific jurisdiction may exist when a non-resident defendant "purposefully avails [it]self of the privilege of conducting activities within the forum State." *Allison*, 621 F. Supp. 2d at 1119 (*quoting Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618, 625 (10th Cir. 1988)).  The minimum contact standard requires activities purposefully directed at residents of the forum state to give rise to the claims asserted.  *Grynberg*, 666 F. Supp. 2d at 1234-35.  Intentional actions must be expressly undertaken, where "the forum state [is] the focal point," and something more than foreseeable economic injury in the forum is required.  *Great Divide Brewing Co. v. Gold Key/PHR Food Serv., LLC*, 127 F. Supp. 3d 1137, 1143 (D. Colo. 2015).

---

[1]  *See e.g.*, *Faber*, 54 F. Supp. 3d at 1188 (finding prior but unrelated interactions with a Colorado resident to be insufficient for minimum contact purposes).

Here, the Non-Colorado Defendants did not purposefully direct activities to Colorado and their only contact was through the NWSS, which draws visitors and participants nationwide.  Ex. A ¶¶ 8-9; Ex. B ¶¶ 8-9.  Further, the NWSS sale is streamed nationwide, and the Non-Colorado Defendants' business activities took place in New York and Massachusetts.  Ex. A ¶¶ 4-6; Ex. B ¶¶ 4-6.  Thus, no activities were specifically directed to Colorado, nor are they so alleged, and Colorado was not the focal point of any of those transactions.

Next, any instances alleged to have occurred in Colorado, were not directed at Colorado or its residents; rather, they were incidental to Colorado due to the fortuitous location of the NWSS.  Thus, no economic injuries were suffered by Plaintiffs in the forum state, and Colorado played a mere fortuitous role in the Non-Colorado Defendants and Plaintiffs' relationship, which is not alleged to "have any role in their continuing relationship."  *Grynberg*, 666 F. Supp. 2d at 1234-35.

Finally, the role of Spring Flight and Seawind in Plaintiffs' claims appear to be as indirect beneficiaries of the alleged wrongs from Chotkowski and McDowell-May.  *See* Compl. ¶ 229.  No alleged conduct directed at Plaintiffs from Spring Flight and/or Seawind takes place in Colorado for there to be a finding of specific jurisdiction.  Further, the alleged wrongs seemingly giving rise to Plaintiffs' claims against Chotkowski and McDowell-May do not include locations.  Thus, no allegations directly point to legally wrongful acts occurring in or giving rise to injuries within Colorado for a finding of specific jurisdiction.

### iii.    *Specific Jurisdiction is inconsistent with Fair Play & Substantial Justice.*

Also, a court's exercise of specific jurisdiction must be consistent with "traditional notions of fair play and substantial justice," which requires determining personal jurisdiction "is reasonable in light of the circumstances surrounding the case."  *Grynberg*, 666 F. Supp. 2d at 1236.

Factors considered are: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the interest in furthering fundamental substantive social policies.  *Id.*  As Plaintiffs' showing on minimum contacts is weak, the burden on Defendants to show unreasonableness is lessened.  *Allison*, 621 F. Supp. 2d at 1118.

In reviewing the first factor and third factor, as stated, Plaintiffs and the Non-Colorado Defendants do not have property or business in the state of Colorado, neither has it been alleged Colorado is a more convenient forum or that Plaintiffs' chances of recovery would be diminished if the actions were resolved elsewhere.  Thus, Plaintiffs do not have an interest in Colorado, and the burden is not insubstantial on the Non-Colorado Defendants.  And while no factor is dispositive, the first factor "is of special significance because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous."  *Grynberg*, 666 F. Supp. 2d at 1237-38.

With the second factor, "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors," which is "implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* at 1238.  Similarly, in the fifth factor, "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies," is to be considered.  *Id.* at 1239.  Here, Colorado does not have a strong interest in adjudicating Plaintiffs' claims against the Non-Colorado Defendants, as no parties are citizens, and Plaintiffs' alleged injuries did not occur in Colorado.  Further, the alleged conduct took place in multiple other forums and had affects in other

forums; thus, effect on social policy of a resolution is minimal in Colorado and likely greater for other states.

Finally, the fourth factor relates to "whether the forum state is the most efficient place to litigate the dispute" taking into consideration "the location of relevant witnesses, where the alleged wrong occurred, what forum's substantive law governs the dispute, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* at 1238. While it is true that dismissing the claims against the Non-Colorado Defendants would result in splitting off the claims against them and AHCA, currently, the only claims against Chotkowski and McDowell-May are clothed in a veneer of references to AHCA's Rules and Regulations. It is clear from the factual allegations that the "meat and potatoes" of the claims against them is the conduct Plaintiffs allege was committed as a result of personal animosity. Thus, these claims could readily be split off and litigated against Chotkowski and McDowell-May in a forum in which jurisdiction is proper. In addition, the nationwide character of AHCA and the multi-jurisdictional conduct alleged in the Complaint mean that witnesses and evidence will be spread about amongst multiple locations regardless of where the case is ultimately litigated. Accordingly, the interest in an efficient resolution of the claims would not be greatly affected by splitting the claims against Defendants based on jurisdiction applicability in Colorado.

In conclusion, there is no personal jurisdiction against the Non-Colorado Defendants, as there is no support for general or specific jurisdiction. Further, exercise of specific jurisdiction is inconsistent with fair play and substantial justice due to the inconvenience for the Non-Colorado Defendants, Colorado's lack of interest in resolution of the claims, and the greater interest in splitting the claims against AHCA and the Non-Colorado Defendants. For these reasons, this

Court lacks personal jurisdiction over the Non-Colorado Defendants and Plaintiffs' Complaint should be dismissed against them pursuant to F.R.C.P. 12(b)(2).

## B.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO F.R.C.P. 12(b)(6) AGAINST ALL DEFENDANTS.

### 1.     The applicable standard of review for a F.R.C.P. 12(b)(6) Motion.

Under F.R.C.P. 8(a)(2), a pleading requires the statement of a claim showing the pleader is entitled to relief and providing the defendant with fair notice of the claim and grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). These grounds are provided through a plaintiff's pleading of factual allegations, which the U.S. Supreme Court held must be more than an unadorned accusation the defendant unlawfully harmed the plaintiff. *Id.* Thus, "[f]actual allegations 'must be enough to raise a right to relief above the speculative level.'" *Sweeney v. Marvin Windows, Inc.*, No. 10-cv-00457-WDM-KMT, 2010 WL 4256195, at *3 (D. Colo. Oct. 20, 2010) (*quoting Twombly*, 550 U.S. at 555). When these requirements are not met, the defendant is entitled to a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6).

To determine satisfaction of these requirements, a court must decide whether allegations in a complaint are sufficient to provide "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A facially plausible claim allows the court to draw a reasonable inference the defendant is liable for the alleged misconduct, while accepting the complaint's well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Id.* at 678-79. However, the court is not bound by conclusory allegations, unwarranted inferences, or legal conclusions, as the pleading of factual allegations must provide more detail than "[t]hreadbare [or formulaic] recitals of the elements of a cause of action, supported by mere conclusory statements."

11

*Id.* at 678, 681.[2]  Thus, "[w]hile legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations" to withstand a F.R.C.P. 12(b)(6) Motion to Dismiss.  *Id.*

While F.R.C.P. 8 governs general requirements of a complaint, those alleging fraud,

mistake, or circumstances constituting fraud or mistake, must be stated with more particularity.

*IIT, Inc. v. Commc'ns Distribs., LLC*, No. 20-cv-01580-RM-STV, 2021 WL 5240287, at *11 (D.

Colo. Oct. 7, 2021) (*citing* F.R.C.P. 9(b)).  While the facts need not be pled with detailed

evidentiary information, the pleading must provide at least the main facts and incidents

constituting fraud or mistake.  *Id.*  Further, this requirement is construed to apply to claims

"sounding in fraud," regardless of the labels attached to the claims, such as civil conspiracy,

misrepresentation, etc.  *Id.*  Each of those types of claims are based in fraud, and thus, the

allegations by the plaintiffs must be pled with particularity pursuant to F.R.C.P. 9(b).  *Id.*

Therefore, without factual allegations pled with particularity, these claims will not survive a

F.R.C.P. 12(b)(6) Motion to Dismiss.  *Id.*

**2.**       **The claim invoking the Federal Question Doctrine (Claim Eight – Violations**
            **of the Sherman Antitrust Act) must be dismissed.**

   ***i.***       ***Plaintiffs have not provided sufficient factual allegations to withstand this***
                ***Motion to Dismiss pursuant to F.R.C.P. 12(b)(6).***

Claims arising under the Sherman Antitrust Act pursuant to 15 U.S.C. § 1 require the

plaintiff to plead factual allegations proving: "(1) defendants entered into a contract, combination,

or conspiracy, and [(2)] the conspiracy unreasonably restrained trade in the relevant market."  *TV*

---

[2]  *Id.* at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual
allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched
as a factual allegation." (*citing Twombly*, 550 U.S. at 555, 127 S. Ct. 1955) (internal quotations
omitted)).

*Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1075 (D. Colo. 1991). Due to the expensive nature and high risk for abusive litigation in these claims, the factual allegations supporting it must be pled with greater particularity; however, not the heightened standard required under F.R.C.P. 9(b)-(c). *Twombly*, 550 U.S. at 568-69.

The U.S. Supreme Court has held the wording of Section 1 prohibits the restraint of trade or commerce only when it is "effected by a contract combination, or conspiracy; [therefore,] the emphasis of the pleadings should establish anticompetitive conduct arising out of an agreement." *Id.* at 553. Thus, the factual allegations must plead sufficient information to suggest some form of agreement was made between all the Defendants, and "tend to exclude the possibility of independent action." *Id.* at 556-57.[3] Plaintiffs must plead facts detailing some setting surrounding the agreement, such as the timeframe, etc. *Id.*[4] Finally, Plaintiffs' pleadings must also provide more factual allegations beyond parallel conduct, as parallel conduct is a bare assertion of conspiracy that does not suffice. *Id.*

Here, Plaintiffs have not provided any factual allegations to specify an agreement between any Defendants, let alone one with an unlawful purpose to prohibit trade and commerce. Compl. ¶¶ 347-352. Plaintiffs have not provided any setting or identified a specific point in time when these alleged agreements would have occurred. They have merely alleged conclusory allegations couched between unwarranted inferences and legal conclusions. At most, the allegations Plaintiffs

---

[3] *See also id.* (noting that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement[,] . . . [rather,] it calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

[4] *See also id.* ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

have pled allege the possibility of parallel conduct, which is not sufficient to meet the requisite plausibility standard. *Twombly*, 550 U.S. at 557. Therefore, Plaintiffs' claim of violations of the Sherman Antitrust Act must be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to state a claim.

### ii.   *Plaintiffs' claim is time-barred by the Statute of Limitations.*

In the alternative, the requisite statute of limitations for claims arising under the Sherman Antitrust Act is four-years. *See* 15 U.S.C. § 15(b). Most of Plaintiffs' allegations appear to stem from conduct/actions occurring between 2007 through 2015. Thus, these claims are barred under this statute and Plaintiffs are not entitled to relief. Therefore, this claim should be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### 3.   The remaining claims must be dismissed to avoid attempts to flout contractual obligations in AHCA's Rules and Regulations' forum-selection clause.

### i.   *The applicable standard in determining implementation of a forum-selection clause and dismissal of remaining state law-based clai*

Following dismissal of the Sherman Antitrust Act claim, the remaining claims are regulated by state law. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction." *Mayhew v. Cherry Creek Mrtg. Co.*, No. 09-cv-00219-PAB-CBS, 2010 WL 935674, at *16 (D. Colo. Mar. 10, 2010) (*citing* 28 U.S.C. § 1367(c)(3)).[5] Thus, the court should dismiss the remaining claims, as they are issues incorporating and applying state law.

---

[5] *See also Erker v. Schmeeckle*, No. 21-cv-02012-KLM, 2022 WL 2966858, at *15 (D. Colo. July 27, 2022) ("[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice'" (*quoting Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)).

Further, the U.S. Supreme Court held that a valid forum-selection clause should be "given controlling weight in all but the most exceptional cases," and typically, a district court can perform a similar modified analysis under 28 U.S.C. § 1404(a) when making a determination whether to enforce the forum-selection clause through dismissal of a case.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013).  The modified analysis requires "the party defying the forum-selection clause" to establish transfer to the selected forum, or dismissal based on the selected forum, is unwarranted.  *Id.* at 63-64.  Further, the district court "should not consider arguments about the parties' private interests[,] . . . as the right to challenge the preselected forum as inconvenient or less convenient" was waived when the parties agreed to the forum-selection clause.  *Id.* at 64.  Thus, a district court may only "consider arguments about public-interest factors" in making its determination.  *Id.*

For further instruction, the Tenth Circuit Court of Appeals implemented a bifurcated formula, which requires review under the modified analysis to take place following the district courts determination of the applicability and enforceability of the forum-selection clause.  K*elvion, Inc. v. PetroChina Can. Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019).[6]  The district court's analysis begins by determining whether the clause is mandatory or permissive.  *Carr*, 2022 WL 910953, at *5.  A clause is mandatory if it "contains clear language showing that jurisdiction is appropriate only in the designated forum."   *Id.* (*quoting K&V Sci. Co. v. Bayerische Motoren WerkeAktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002)).  Clear language often requires the

---

[6]  *See also Carr v. Wells*, No. 20-cv-03319-PAB-SKC, 2022 WL 910953, at *5 (D. Colo. Mar. 28, 2022) (holding that before applying a modified analysis under 28 U.S.C. § 1404(a), courts must determine whether there is a valid and enforceable forum-selection clause).

use of distinct words, such as "shall" or "counties." *Id.* at *6.[7]

Next, district courts should review for validity. *Carr*, 2022 WL 910953, at *6. If a clause is mandatory, it is considered *prima facie* valid, unless the party opposing the clause "clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Carr*, 2022 WL 910953, at *5 (*quoting Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907 (1972)). Finally, if a clause is valid and enforceable, the court then reviews the clause's plain language to determine the specified venue, governed parties, and claims regulated. *Kelvion*, 918 F.3d at 1092-93. The case should be dismissed if the clause applies to the dispute, governs the litigating parties, and the suit is not in the selected venue, unless the party defying the clause has argued valid public-interest factors making dismissal unwarranted. *Atl. Marine Constr.*, 571 U.S. at 63-65, 134 S. Ct. 568.

> ## ii.    The forum-selection clause is mandatory and enforceable, and as such, the remaining claims should be dismissed.

The forum-selection clause, found in AHCA's Rules and Regulations and agreed to by all parties, states:

> Any person(s) or business entity joining or renewing membership in AHCA shall be deemed to agree to dispute resolution in Adams County, Colorado. By becoming a member, said member(s) agrees that any and all disputes by and between members of the Association and the American Highland Cattle Association shall be first submitted to mediation in Adams County, Colorado. In the event good faith efforts to resolve the dispute in mediation fails, the parties may resort to litigation in the State Courts of Colorado, Adams County, Colorado.

---

[7] *See also Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (holding a forum-selection clause indicated a mandatory intent through use of the word "shall"); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (holding a forum-selection clause indicated mandatory intent through use of the word "counties" in designating venue).

The plain language provides for venue in the State Courts in Adams County, Colorado in the last sentence.  The use of the word "county" and specificity of "State Courts" provides evidence the clause is mandatory.  Moreover, because the clause is mandatory and Plaintiffs have not pled sufficient factual allegations to show otherwise, the clause is considered *prima facie* valid and Plaintiffs' Complaint should be dismissed.

**4.      Alternatively, the remaining State law claims are governed by Colorado law.**

Alternatively, if this Court proceeds to review the remaining state law claims, each claim should be governed by Colorado law, not Vermont law, as Plaintiffs alleged.  *See* Compl. ¶ 5.

### *i.      Colorado's conflict-of-laws rule governs determination of state laws.*

Claims sounding in tort and contract are determined under applicable state laws, raising a conflict-of-laws issue.  Generally, the court applies the conflict-of-law rules of the forum state. *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014).  Accordingly, the conflict-of-laws rule of Colorado should be applied in this matter.  This is further supported by the forum-selection clause providing for choice of venue in Colorado state courts, as discussed above, which would then apply the Colorado conflict-of-laws rule also.

### *ii.      Colorado laws govern the remaining state law-based clai*

Colorado's conflict-of-laws rule "follows the Restatement (Second) of Conflict of Laws (1971) . . . for both contract and tort actions."  *Id.*[8]  The general approach and factors are laid out in the Second Restatement's § 6, resembling the "most significant relationship" test.  *Id.*

This case has multiple parties domiciled in multiple states.  Compl. ¶¶ 11-17.  However,

---

[8]  *See also id.* (*referencing Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) ("contract actions"); *First Nat'l Bank v. Rostek*, 514 P.2d 314, 319-20 (Colo. 1973) ("tort actions")).

the principal place of business of AHCA is Brighton, Colorado.  Compl. ¶¶ 2, 6-7.  Further, AHCA's Rules and Regulations provide for disputes to be litigated in Colorado, Compl. ¶ 8, and the key cattle shows discussed throughout Plaintiffs' Complaint take place in Denver, Colorado. Compl. ¶¶ 61-290.  Thus, as related to tort claims, Colorado has the most significant relationship because any claims arising from advertisements, marketing, the newsletters, organization governance, and more would originate from the organization's principal place of business in Brighton, Colorado, or with the shows in Denver, Colorado.  Further, claims arising in contract would relate back to membership matters within AHCA, which are governed by AHCA's Rules and Regulations.  Thus, the subject matter and location origin again would arise in Brighton or Denver, Colorado.  Therefore, the claims sounding in tort and contract should be governed by Colorado Law, as it has the most significant relationship to the underlying clai

5. **The remaining claims must be dismissed pursuant to F.R.C.P. 12(b)(6), due to the applicable Statutes of Limitations.**

    i. ***Claim One (Breach of Contract), Two (Breach of the Covenant of Good Faith and Fair Dealing), & Three (Promissory Estoppel) are time barred by Colorado's Statute of Limitations for contract clai***

The Colorado Statute of Limitations for contract claims, regardless of the legal theory upon which they are asserted, must be "commenced within three years after the cause of action."  COLO. REV. STAT. § 13-80-101(1)(a) [hereinafter C.R.S.].[9]  "A cause of action for breach of any express or implied contract, [or] agreement . . . shall be considered to accrue on the date the breach is

---

[9] *See also Voodoo Leatherworks, LLC v. Waste Connections US, Inc.*, No. 1:21-cv-02005- RMR-MDB, 2022 WL 3027742, at *4-6 (D. Colo. Aug. 1, 2022) (establishing breach of contract and breach of the covenant of good faith in fair dealing arise through claims in contract and are subject to the three-year statute of limitations period); *Durrah v. JPMorgan Chase Bank, N.A.*, No. 18-cv-02755-NRN, 2020 WL 1317422, at *6 (D. Colo. Feb. 26, 2020) (discussing where promissory estoppel arises from contract, it is subject to the three year statute of limitations).

discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. § 13-80-108(6). Only the following claims are an exception to § 13-80-101(1)(a), allowing for a six-year limitations period: actions involving liquidated or unliquidated debt, arrears for rent, actions by the public employees' retirement association, and actions involving recovery of damages for checks, drafts, or orders not paid upon presentment. *Id.*; C.R.S. §§ 13-80-103.5, 13-21-109.

Here, while the contracts are not sufficiently identified, nor are the actions in which Plaintiffs allege breach, based on the Plaintiffs' complaint, the cause of actions would have accrued during the 2008 through 2017 timeframe, since this is the period Plaintiffs' claim participation in AHCA organization shows and events, and state the actions of 2018 are derived from these events. Compl. ¶¶ 1-355. None of these actions fall within the § 13-80-101(1)(a) exception; thus, any action creating contract claims would be subject to the three-year statute of limitations. As a result, claims for these events should have been filed between 2011 through 2020. This case was not filed until May 17, 2021. Therefore, claims one, two, and three are barred by the three-year statute of limitations, pursuant to C.R.S. § 13-80-101, and should be dismissed for failure to state a claim upon which relief can be granted.[10]

ii.       ***Claim Four (Intentional Infliction of Emotional Distress), Five (Tortious Interference), Six (Defamation Per Se), & Seven (Trade Libel) are time barred by Colorado's Statute of Limitations for tort clai***

These tort claims fall between two Colorado statute of limitations. General tort actions "must be commenced within two years after the cause of action accrues," "regardless of the theory upon which suit is brought." C.R.S. § 13-80-102. This includes actions for intentional infliction

---

[10] *See Lynch v. CRC Indus., Inc.*, No. 19-cv-02399-RM-KMT, 2020 WL 5076752, at *3 (D. Colo. Aug. 27, 2020) (providing a motion to dismiss pursuant to F.R.C.P. 12(b)(6) is an appropriate remedy for a claim barred by a state's statute of limitations).

of emotional distress, tortious interference, and trade libel.[11]   However, specific tort actions of "[a]ssault, battery, false imprisonment, false arrest, libel, and slander" are subject to a one-year commencement period after the cause of action accrues.   C.R.S. § 13-80-103.   The claim for defamation per se would be subject to this statute.   *See Dickerson*, 2016 WL 11295454, at *3.

Here, while the grounds upon which these tort claims rest are not sufficiently identified, the causes of action would have accrued during the 2008 through 2017 timeframe.   Compl. ¶¶ 1-355.   As a result, claims for these events should have been filed between 2009 through 2019.   This case was not filed until May 17, 2021, barring claims four through seven pursuant to the applicable statute of limitations.   C.R.S. §§ 13-80-102, 13-80-103.   Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(6).

### iii. Claim Nine (Violations of the Vermont Consumer Protection Act) must be dismissed, as it is barred by the applicable statute of limitations.

While there is not a set statute of limitations in the Vermont Consumer Protection Act ("VCPA"), courts have limited the availability of remedies based on the underlying causes of action.   *See Reis v. Ben & Jerry's Homemade, Inc.*, No. 2:20-cv-119, 2020 WL 6110970, at *1-2 (D. Vt. Oct. 16, 2020).   Here, the underlying causes of action are based in contract and tort, and as such, would be subject to the above limitations discussed, since it is Colorado law determining the applicability of the VCPA.   *See infra* Section IV.B.6.viii.; *see also Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1210-16 (D. Colo. 2010).   While Plaintiffs have not provided sufficient factual allegations giving rise to this claimthe cause of actions would be barred based on their

---

[11]   *See Full Draw Prods. v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1008-09 (D. Colo. 2000); *see also Dickerson v. Pub. Serv. Co. of Colo.*, No. 16-cv-01586-CBS, 2016 WL 11295454, at *3 (D. Colo. Dec. 21, 2016).

accrual date of 2008 through 2017, as discussed above.  Therefore, Plaintiffs' claim should be dismissed for failure to state a claim upon which relief may be granted pursuant to F.R.C.P. 12(b)(6), as Plaintiffs do not have a right to relief under any of the above causes of action, leading to a lack of remedy here also.

6. **Alternatively, the remaining claims must be dismissed pursuant to F.R.C.P. 12(b)(6) for insufficient factual allegations and/or failure to provide a claim where Plaintiffs are entitled to relief.**

Finally, if the claims are not barred and/or dismissed for the reasons above, each remaining claim must be dismissed pursuant to F.R.C.P. 12(b)(6) for the reasons in each section below.

### i.       *Claim One (Breach of Contract) must be dismissed.*

As contract claims are governed by Colorado law, Plaintiffs must plead factual allegations establishing: "(1) the existence of a contract; (2) performance under the contract by the plaintiff or some justification for nonperformance; (3) the defendant's failure to perform under the contract; and (4) resulting damage to the plaintiff." *Hemman Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 859 (Colo. App. 2007).  The language of the contract for which breach is asserted should be set forth in *haec verba*, or stated through sufficient facts, as to ascertain its legal effect. *Abby v. Dexter*, 72 P. 892, 893 (Colo. App. 1903). Sporadically issued documents may not be aggregated "into a legally binding contract without some showing of the elements of a contract as to each document.  Individual factors that do not, as a matter of law, establish [a contract] cannot by some peculiar alchemy, create a legally binding relationship when combined with each other." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464-65 (10th Cir. 1994).  Further, breach or the defendant's failure to perform must be pled through sufficient factual allegations, identifying when and how the breach allegedly occurred. *Id.* at 1465-66.

Claim one states Plaintiffs entered into a "contract" with the Defendants, who breached said contract, and caused Plaintiffs to suffer damages.  Compl. ¶¶ 292-300.  It is unclear as to what "contract" Plaintiffs are specifically referencing, as Plaintiffs reference a "contract" through the purchase of an AHCA membership, restate AHCA's mission statement, and then reference an agreement, and several other AHCA documents.  Compl. ¶¶ 293-99.  Without further information identifying the intent to form a contract between the parties through these documents, attempting to aggregate the documents to make a legally binding contract does not suffice.  Further, Plaintiffs do not provide any wording from the contract, a statement of it, or attach it as an exhibit violating the *haec verba* or legal effect requirement.  Thus, Plaintiffs have failed to provide sufficient factual allegations to put the Court and the Defendants on notice of the alleged breach of contract.

Additionally, Plaintiffs do not provide sufficient factual allegations to show AHCA or the others failed to meet AHCA's mission statement or any other alleged "contracts" or agreements; are the proximate or direct cause of the "damages"; and fail to  provide facts as to what "damages" were the result of these alleged breaches.  Plaintiffs' statements that "Defendants breached their agreements," that said "breaches" were "willful and wonton," and "Plaintiffs were directly and proximately damaged" are all conclusory legal allegations.  Compl. ¶¶ 297-98, 300.  Conclusory legal allegations are not sufficient factual allegations to withstand a Motion to Dismiss.  *See supra*, Section IV.B.1. (*discussing Iqbal*, 556 U.S. at 678).  As such, Plaintiffs' claim must be dismissed pursuant to F.R.C.P. 12(b)(6), failure to state a claim upon which relief can be granted.

### ii.        *Claim Two (Breach of the Covenant of Good Faith and Fair Dealing) must be dismissed.*

Colorado law provides for an implied duty of good faith and fair dealing within every contract.  *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 624 (10th Cir. 1995).  The duty

imposed requires each party effectuate their promised intentions, as to honor the reasonable and justified expectations of each party. *Id.* Thus, the Court's focus should be on the expectations of each party and whether those expectations were breached. *Occusafe*, 54 F.3d at 624.

Here, Plaintiffs again attempt to aggregate sporadically issued documents into one binding contract. Compl. ¶ 302. At most, Plaintiffs assert failures of an obligation to promote their business occurred when another member and/or farm was promoted in *The Bagpipe*. However, Plaintiffs fail to show this is a breach, as it provides the parties promoted businesses and farms, meeting their generic obligations set out in AHCA's policies, procedures, mission statements, etc. Thus, permitting this claim on this basis would provide a slippery slope, as any and every member could have a claim similar at one time or another, when AHCA and the other defending parties were attempting to fulfill their obligations to their members. These generic allegations of obligations and expectations of the Plaintiffs are not reasonable or justified to support this claim.

Finally, Plaintiffs do not provide sufficient factual allegations to show Plaintiffs received an injury. Throughout their complaint, they specifically reference how Plaintiffs had multiple successes, despite the alleged "harm" endured. Therefore, Plaintiffs have not provided sufficient factual allegations on which to state a claim for relief for breach of the covenant of good faith and fair dealing and the claim should be dismissed pursuant to F.R.C.P. 12(b)(6).

### iii. *Claim Three (Promissory Estoppel) must be dismissed.*

A claim for promissory estoppel in Colorado follows the "doctrine as articulated in the Restatement (Second) of Contracts," which requires:

> (1) a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise; (2) action or forbearance induced by that promise; and (3) the existence of

circumstances such that injustice can be avoided only by enforcement of the promise.

*Leighton v. City & Cty. of Denver*, No. 14-cv-02812-PAB-NYW, 2015 WL 5532751, at *6 (D. Colo. Sept. 21, 2015) (*quoting Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995). "[W]hether an alleged promise is claimed to be a part of an express contract or is asserted as the basis for the application of promissory estoppel, it must, in either event, be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its ter" *Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 620 (Colo. App. 1997).[12]  Thus, a "clear and unambiguous" promise must be pled that is "sufficiently definite to allow a court to understand the nature of the obligation."  *Leighton*, 2015 WL 5532751, at *6.

Here, Plaintiffs again reference multiple documents issued sporadically attempting to aggregate the documents into a binding contract and make a promise specific to Plaintiffs.  Compl. ¶¶ 308-311.  A generic obligation to treat members fairly, is not sufficient for a claim of promissory estoppel because more detail is needed to show the obligations assumed by each party and actions in which each failed to meet these obligations.  Compl. ¶¶ 308-309.[13]  Also, Plaintiffs *have* pled allegations showing AHCA *met its obligation* to treat members fairly, through the references to multiple documents, newsletters, and emails, where AHCA and the other defending parties

---

[12]  *Id.* (noting further, "[t]his general precept has been applied by the Colorado courts in various settings" (*referencing Stice v. Peterson*, 355 P.2d 948 (Colo. 1960) ("if language is too uncertain to allow the court to determine intent, it cannot be enforced"); *Greater Serv. Homebuilders' Investment Ass'n v. Albright*, 293 P. 345 (Colo. 1930) ("if agreement is vague and indefinite as to any essential term, it does not constitute a contract" for purposes of enforceable obligations))).

[13]  *See Soderlun*, 944 P.2d at 621 (*referencing Vasey*, 29 F.3d at 1465 ("assurance of fair treatment [were] mere 'vague assurances' and unenforceable under Colorado Law")).

attempted to look into any member complaints, published articles about their members, and created guidelines as an attempt at a bright-line rule for their shows. Compl. ¶¶ 37-42, 76-94, 119-260.

> **iv.   Claim Four (Intentional Infliction of Emotional Distress) must be dismissed.**

The intentional infliction of emotional distress "is otherwise known as 'outrageous conduct'" in the state of Colorado and requires proof of the following elements: "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009).

Here, Plaintiffs have merely restated the legal elements for this claim against Chotkowski and McDowell-May. Compl. ¶¶ 314-317. Plaintiffs have not identified which actions support this claim. As sufficient factual allegations require more than "[t]hreadbare [or formulaic] recitals of the elements of a cause of action, supported by mere conclusory statements," Plaintiffs have not pled the factual allegations required to survive a Motion to Dismiss. *Iqbal*, 556 U.S. at 678, 681. Therefore, Plaintiffs' claim should be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> **v.   Claim Five (Tortious Interference) must be dismissed.**

A claim for tortious interference requires the plaintiff to allege:

> [1] it had either a valid existing contract with a third party or that it expected to enter into a contract with a third party; [2] the [d]efendants induced or otherwise caused the third party to breach the contract or not enter into the contractual relation; and [3] the [d]efendants did so intentionally and via improper means.

*IIT, Inc.*, 2021 WL 5240287, at * 10 (*quoting Tara Woods Ltd. v. Fannie Mae*, 731 F. Supp. 2d 1103, 119 (D. Colo. 2010)). The factual allegations must include how the defendant acted

improperly, as it is not enough for the plaintiff to allege mere interference. *Id.* at *11; *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871-72 (Colo. 2004) (en banc).  Further, there must be elements of some type of fraud, physical threat, lawsuit threat, misrepresentation, etc., as mere self-interest or persuasion of a third party is not sufficient. *IIT, Inc.*, 2021 WL 5240287, at *11.[14]  Therefore, the heightened standard of rule 9(b) has been required for these clai *Id.*

Here, Plaintiffs again recite the legal elements required for the claim intermingled with conclusory allegations and unwarranted interferences against the Defendants.  Compl. ¶¶ 318-324. Plaintiffs do not provide factual allegations of the contracts affected, how defendants knew of said contracts, how defendants specifically interfered, or how the alleged interference equates to "improper" actions.  Thus, these allegations do not rise to the level of particularity required by F.R.C.P. 9(b), nor do they provide sufficient factual allegations, as required pursuant to F.R.C.P. 8(a).  Therefore, Plaintiffs have not provided sufficient factual allegations for this claim, and it must be dismissed pursuant to F.R.C.P. 12(b)(6).

> ### vi.        Claim Six (Defamation Per Se) must be dismissed.

In general, Colorado courts have defined defamation as "a communication that holds an individual up to contempt or ridicule and causes injury or damage." *Wilson v. Meyer*, 126 P.3d 276, 279, 281 (Colo. App. 2005).  The general elements required are:

> (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff cause by publication.

---

[14] *See also id.* (*referencing* Restatement (Second) of Torts § 767 cmt. c (1979) ("But competitive self-interest, including persuading their parties to change providers, is not improper on its own"); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1123 (10th Cir. 2008) ("stating that competitive self-interest is not, by itself, improper, even if it harms competitors")).

*Han Ye Lee*, 222 P.3d at 961.  These elements "must be predicated on the context of the entire story and the common meaning of *the words used*."  *Wilson*, 126 P.3d at 279 (emphasis added).  This is due to many applicable exceptions, such as the fair report doctrine,[15] statements protected as opinions on matters of public concern,[16] statements alleged to be adopted through silence,[17] and statements involving issues of self-governance.[18]   Thus, the context but also wording and/or phrasing of the language is important, as the meaning of the words used is a matter of law left to the court.  *Fry v. Lee*, 408 P.3d 843, 848-50 (Colo. App. 2013).

Here, Plaintiffs allege generally of defamation against Defendants, without stating the specific language of the defamatory statements upon which the allegations rest.  Compl. ¶¶ 325-335.  There are not sufficient factual allegations for the Court, or Defendants to ascertain the context in which the defamatory statements were made, or the language used.  As Plaintiffs have not pled sufficient factual allegations to support a claim for defamation per se, the claim should be dismissed pursuant to F.R.C.P. 12(b)(6).

### vii.       Claim Seven (Trade Libel) must be dismissed.

Under Colorado law, a trade libel claim is comparable to commercial/business

---

[15]  The fair report doctrine protects reports and/or comments made in public proceedings, where "the public would have heard [the statements] had they attended the public proceeding[s]."  *Id.* (*citing Hayes v. Newspapers of N.H., Inc.*, 685 A.2d 1237, 1238 (N.H. 1996); *Darakjian v. Hanna*, 840 A.2d 959, 963 (N.J. Super. Ct. App. Div. 2004))).

[16]  *See id.* (*citing Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994)).

[17]  *See id.* (*referencing Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 287 (Utah 2005))).

[18]  Issues such as self-governance have been protected on free speech grounds.  *See Ayala v. Wash.*, 679 A.2d 1057, 1067 (Colo. App. 1996).  Other issues, such as "fair comment," are protected under "numerous types of speech from being actionable in defamation suit[s]," under Colorado law. *Examination Bd. of Prof'l Home Inspectors v. Int'l Ass'n of Cert. Home Inspectors*, 519 F. Supp. 3d 893 (D. Colo. 2021).

disparagement claim[19]  Thus, to succeed under this claim, the following elements are required:

> (1) a false statement, (2) published to a third party, (3) derogatory to the plaintiff's business in general . . . or its quality, and (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages.

*Id.* at 918 (*quoting Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1166 (Colo. App. 1989)).  As this claim correlates to the general tort claim of defamation, "[t]he constitutional protections afforded a defendant in a defamation action are applicable to a defendant" in a disparagement context.  *Id.*  Therefore, the Tenth Circuit Court of Appeals has determined Colorado law does not recognize a disparagement or trade libel claim that relies "entirely on expressions that could not support a defamation claim."  *Examination Bd.*, 519 F. Supp. 3d at 918 (*quoting TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1200 (10th Cir. 2007).  Thus, the plaintiff's pleadings must also support a defamation claim.

Here, Plaintiffs again make general allegations against Defendants.  Compl. ¶¶ 336-346.  Plaintiffs do not provide sufficient factual allegations of the defamatory statements/language, the context of the defamation, or details of any injuries suffered by Plaintiffs.  Plaintiffs make conclusory allegations and unwarranted inferences in an attempt to support the claim, which are not sufficient to withstand a motion to dismiss pursuant to F.R.C.P. 12(b)(6).

###### viii. *Claim Nine (Violations of the VCPA) must be dismissed.*

In general, when the Colorado courts have reviewed whether to apply the Colorado Consumer Protect Act ("CCPA") or that of another state, such as the VCPA, the court has looked

---

[19] *See Examination Bd.*, 519 F. Supp. 3d 893, 917 n.3 (D. Colo. 2021) (noting the minimal history of trade libel claims and its combination with disparagement claims).

at policy and location of injury in making its decision. *Elvig*, 696 F. Supp. 2d at 1209-15 (D. Colo. 2010). As the alleged location of injury likely occurred in Colorado (discussed in the statute of limitations arguments), the Court should focus on the policy behind the CCPA to determine if it or another state's Consumer Protection Act ("CPA") is applicable. *Id.*

Colorado courts have established the purpose of the CCPA is to protect Colorado citizens and has refused to extend it extraterritorially to non-citizens. *Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-cv-01849-PAB-KLM, 2017 WL 4222618, at *6-7 (D. Colo. Sept. 21, 2017). Instead, the courts have applied the CPA from the state in which the plaintiffs are citizens. *Elvig*, 696 F. Supp. 2d at 1210-14. However, it still requires the plaintiffs to show the defendant's alleged conduct was unlawful in other states.[20]

The VCPA requires: (1) there to be a "representation, omission, or practice likely to mislead consumers; (2) the consumer [to have] interpret[ed] the message reasonably under the circumstances; and (3) the misleading effects [to have been] material, that is, likely to affect the consumer's conduct or decision regarding the product." *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014). The VCPA also requires proof the plaintiff is a consumer within the definition of the VCPA. *See Russo v. Navient Solutions, LLC*, No. 1:16-cv-316-jgm, 2017 WL 4220455, at *3 (D. Vt. Sept. 21, 2017). Further, in determining whether an act is "unfair," the court considers "several factors, including: (1) whether the act offends public policy, (2) whether it is immoral, unethical, oppressive, or unscrupulous, and (3) whether it causes substantial injury

---

[20] *See Shostrom v. Ethicon, Inc.*, No. 20-cv-1933-WJM-STV, 2022 WL 2237341, at *1 (D. Colo. June 22, 2022) (stating "[i]n *BMW*, the Supreme Court concluded that it follows from 'principles of state sovereignty and comity that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." (*quoting BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572, 116 S. Ct. 1589 (1996))).

to consumers," as well as whether the alleged act is unlawful, which is further emphasized when the CPA of the state being applied would not have personal jurisdiction itself over the defendants. *Drake*, 63 F. Supp. 3d at 393-94; *Shostrom*, 2022 WL 2237341, at *1.

Plaintiffs have not provided sufficient factual allegations to support this claim against the Defendants, nor have they provided the legal requirements on which it stands.  Compl. ¶¶ 353-357.  Plaintiffs have merely stated the legal conclusions of a claim arising under the VCPA, which is not sufficient to provide notice of its claim or a statement of relief.

At most, Plaintiffs make reference to their purchase of a membership; however, they do not provide allegations on which the membership is insufficient, misleading, deceptive, anticompetitive, or unlawful.  Because Plaintiffs have not provided sufficient factual allegation in which relief may be granted, this claim should be dismissed pursuant to F.R.C.P. 12(b)(6).

## V.   CONCLUSION

WHEREFORE, for the reasons stated above, Defendants, AHCA, Chotkowski, McDowell-May, Spring Flight, and Seawind request this Honorable Court to dismiss Plaintiffs' Complaint, granting this Motion to Dismiss, pursuant to F.R.C.P. 12(b)(2) and 12(b)(6).

Respectfully submitted this 21st day of October 2022.

TREECE ALFREY MUSAT, P.C.

*s/ Paul E. Collins*
Paul E. Collins, Reg. No. 15866
Lauren M. Getsie, Reg. No. 35457
633 17th Street, Suite 2200
Denver, CO  80202
Phone: 303-292-2700
Fax: not designated
Email: pcollins@tamlegal.com
        lgetsie@tamlegal.com
*Attorneys for Defendants*

30

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 21st day of October, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record to their CM/ECF-registered email addresses:

Dan Ernst – [dan@ernstlegalgroup.com](mailto:dan@ernstlegalgroup.com)
Ernst Legal Group, LLC
*Counsel for Plaintiffs*

*s/ Ronda Frazier*
Ronda Frazier