IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-1348-WJM-SKC

SHAT ACRES HIGHLAND CATTLE, LLC, a Vermont limited liability company,
JANET STEWARD, an individual, and
RAY SHATNEY, an individual,

      Plaintiffs,

v.

AMERICAN HIGHLAND CATTLE ASSOCIATION (AHCA), a South Dakota nonprofit
corporation with its principal place of business in Brighton, Colorado,
JAQUELYN CHOTKOWSKI, individually and as a member of AHCA,
LAURA MCDOWELL-MAY, individually and as a member of AHCA,
SPRING FLIGHT FARM LLC, a New York limited liability company, and
SEAWIND MEADOWS LLC, a Massachusetts limited liability company,

      Defendants.

---

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' AMENDED MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2), (b)(6)

---

This matter is before the Court on Defendants' American Highland Cattle

Association ("AHCA"), Jacquelyn Chotkowski, Laura McDowell-May (jointly, "Individual

Defendants"), Spring Flight Farm, LLC ("Spring Flight"), and Seawind Meadows, LLC

("Seawind") (jointly, "Entity Defendants") (collectively, "Defendants") Amended Motion to

Dismiss Pursuant to F.R.C.P. 12(b)(2), (b)(6) ("Motion") (ECF No. 90).  For the following

reasons, the Motion is denied in part and granted in part.

### I. BACKGROUND[1]

Janet Seward and Ray Shatney own and operate Shat Acres Highland Cattle,

---

[1] Citations to (¶ __), without more, are references to the Complaint. (ECF No. 1.).  The Court assumes these facts as true only for the purposes of this Order.

LLC ("Shat Acres") (collectively, "Plaintiffs").  (¶¶ 15–16.)  Plaintiffs are citizens of Vermont.  (*Id.*)  Chotkowski owns Spring Farm, and both are citizens of New York.  (¶ 11–12.)  McDowell-May owns Seawind, and both are citizens of Massachusetts.  (¶ 13–14.)  Plaintiffs, the Individual Defendants, and the Entity Defendants are all members of the AHCA, which is a citizen of South Dakota and Colorado.  (¶ 6–7.)  Plaintiffs, the Individual Defendants, and the Entity Defendants are also each highly involved in the AHCA, with Chotkowksi and McDowell-May both being past presidents.  (*E.g.*, ¶¶ 11–14, 37, 42, 53.)

The AHCA is a trade organization with the stated purpose of preserving the integrity of the highland cattle breed and assisting members in creating and maintaining the value of their stock.  (¶ 49.)  It maintains a registry of highland cattle, only available to dues-paying members, which catalogues the registered cattle's pedigrees.  (¶ 55.)  Because registration ensures an animal's pedigree, an animal that is not registered has substantially less value than one that is.  (¶ 56.)  The AHCA also organizes cattle shows and sponsors the National Western Stock Show ("Stock Show") in Denver, Colorado, which is the largest highland cattle show in the United States.  (¶¶ 57–58, 61; ECF No. 90 at 2.)  An animal's success at such a show dramatically increases its breeding and resale value.  (¶ 59.)  Plaintiffs' cattle have been extraordinarily successful at these shows.  (¶¶ 61–64, 68–71.)

Chotkowski is highly influential with the AHCA.  (¶¶ 96–99.)  "It is widely believed among AHCA members that, despite who may be serving as an officer or Board member, Defendant Jacquelyn Chotkowski, and those allied with her, control the Association and all aspects of it."  (¶ 99.)  To put it succinctly, Plaintiffs have some

fundamental differences of opinion with the Individual Defendants about how to show and preserve the highland breed and how to ensure such preservation is financially feasible. (¶¶ 101–33.)

In 2015, as a result of these fundamental differences and work Steward performed as part of an AHCA committee to advance her vision on these issues, Chatkowski, McDowell-May and non-party Deb Nelson allegedly engaged in a campaign of false allegations of ethical violations and threats to bring unspecified criminal charges against Plaintiffs. (¶¶ 134–72.)  This campaign resulted in an investigation of Plaintiffs by an AHCA Ethics Committee.  (¶ 155–56.)  The Ethics Committee exonerated Plaintiffs of any wrongdoing and ordered Chotkowski to issue a written apology.  (¶ 162.)  Chotkowski did not comply with this order but, even after being notified of this failure, the AHCA board refused to punish Chotkowski.  (¶ 163–65.)  According to Plaintiffs, this emboldened Chotkowski, and she and McDowell-May continued their attempts to undermine Steward's efforts.  (¶ 166.)

In 2018, after Plaintiffs' incredibly successful year in 2017, a similar series of events unfolded.  (¶ 174.)  Plaintiffs were informed that more complaints had been made against them and that, despite no board authorization of an Ethics Committee, an investigation was being conducted into their alleged conduct.  (¶¶ 178–86.)  Plaintiffs learned that some of the allegations were allegedly the result of McDowell-May's lie to the AHCA Governance Committee that she had received complaints about Steward. (¶¶ 177–81.)  This meeting was held in Denver, Colorado and was attended by both Chotkowski and McDowell-May.  (ECF No. 91-1 ¶¶ 2–3.)  Other allegations related to Plaintiffs' conduct at AHCA shows in violation of the International Association of Fairs

and Exhibitions Code of Show Ring Ethics ("IAFE Code").  (¶ 188.)  Rather than definitively declaring that these accusations were false, the ACHA determined that it could not investigate these allegations because the underlying conduct occurred before it adopted the IAFE Code.  (¶¶ 195–96.)  According to Plaintiffs, this was misleading because AHCA "point shows" and NWSS have operated under the IAFE Code for decades.  (¶¶ 190–93.)  Ultimately, Plaintiffs were again exonerated of wrongdoing.  (¶ 226.)  Despite this, the reputational damage had allegedly been done, resulting in a 30% reduction in Plaintiffs' breeding sales in 2018 and no ACHA member buying any cattle from them in either 2018 or 2019.  (¶¶ 232–33.)

## II. LEGAL STANDARDS

### A.    Rule 12(b)(2)

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction, and may satisfy this burden by making a prima facie showing that personal jurisdiction over the defendants obtains.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  "In the preliminary stages of the litigation, however, the plaintiff's burden is light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id.*  The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Id.*  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor."  *Id.*

**B.** **Rule 12(b)(6)**

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A.     Specific Jurisdiction

The Individual and Entity Defendants are citizens of New York and Massachusetts and challenge this Court's personal jurisdiction over them.  (ECF No.90 at 5–11.)  All parties argue, and the Court agrees, that if the Court does have jurisdiction over these defendants, it is via the specific jurisdiction standards announced by *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.  (ECF No. 90 at 7–11; ECF No. 91 at 1–12.)  Plaintiffs must demonstrate personal jurisdiction over each defendant for each claim.  *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020).

### 1.     Antitrust Claim

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotation marks omitted).

#### a.     *15 U.S.C. § 22*

Plaintiffs argue 15 U.S.C. § 22 confers worldwide service for antitrust claims, and therefore jurisdiction over all defendants.  (ECF No. 91 at 4.)  Plaintiffs are mistaken because Section 22, by its own terms, only applies to corporations.  15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a *corporation* may be brought not only in the judicial district whereof it is an inhabitant, but also in any district

wherein it may be found or transacts business; and all process in such cases may be served in the district of which *it* is an inhabitant, or wherever it may be found." (emphasis added)); *see also Delong Equip. Co. Washington Mills Abrasive Co.*, 840 F.2d 843, 848 (11th Cir. 1988) (applying Section 22 to "a corporate defendant"). Section 22 does not permit nationwide service (and therefore jurisdiction[2]) on either the Individual or Entity[3] Defendants.  And unlike 18 U.S.C. § 1965, which applies to civil actions brought under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, *et seq.*, Section 22 does not explicitly provide for nationwide service upon additional non-resident parties when "the ends of justice require" their inclusion in the action.  *Compare* 18 U.S.C. § 1965, *with* 15 U.S.C. § 22.

*Dicta* in *Cory* perhaps suggests that, nevertheless, Section 22 permits service (and jurisdiction) over a non-resident defendant when the district court has jurisdiction over one defendant and the ends of justice require the inclusion of the non-resident defendant.  In *Cory*, the Tenth Circuit concluded that 18 U.S.C. § 1965 permitted such ends-of-justice service because the RICO Act was "modeled on the present antitrust legislation."  468 F.3d at 1231 (quoting H.R. Rep. No. 91–1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4034).  The Tenth Circuit then concluded that the following passage from *United States v. National City Lines*, 334 U.S. 573 (1948), "coincides with [its] reading of § 1965":

---

[2] *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006) ("Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process.").

[3] The Entity Defendants are limited liability companies.  "Multiple district courts and the Third Circuit have strictly construed the statute and excluded limited liability companies from Section 12 of the Clayton Act, [codified as 15 U.S.C. § 22]."  *San Fransisco Comprehensive Tours, LLC v. Tripadvisor, LLC*, 2021 WL 4394253, at *5 (D. Nev. Sept. 24, 2021) (citing cases).

> The scheme of the [antitrust] statutes . . . is that the Attorney General may lay the venue in any district where he may properly serve one or more of his defendants.  He may go ahead with his action against them, whether he is allowed to bring in others or not.  Before he can bring in other parties than those properly served in the district, i.e., those "inhabitant," "transacting business," or "found" there, it must be made to appear to the court that the ends of justice require that they be brought before the court, in which case they may be summoned from any district.

*Cory*, 468 F.3d at 1231 (quoting *Nat'l City Lines*, 334 U.S. at 598 (Jackson, J., concurring)).

The Court is not persuaded.  Notably, concluding that Section 22 permits ends-of-justice service upon the Individual and Entity Defendants based on *Cory* would require reliance upon two layers[4] of non-binding precedent.  Moreover, while the quoted portion of Justice Jackson's opinion itself quotes Section 22, it does so to define "those properly served in the district."  *Nat'l City Lines*, 334 U.S. at 598 (Jackson, J., concurring).  In the immediately preceding paragraph, Justice Jackson describes the "rather unusual" venue provisions in the antitrust statutes, citing 15 U.S.C. §§ 5, 10, and 25, all of which contain "almost identical" language permitting ends-of-justice service in actions brought by the United States.  *Nat'l City Lines*, 334 U.S. at 598 (Jackson, J., concurring); *see* 15 U.S.C. § 5 (permitting ends-of-justice service in proceedings brought under 15 U.S.C. § 4, which empowers the United States to bring actions in equity to prevent antitrust violations); 15 U.S.C. § 10 (same in proceedings under 15 U.S.C. § 9); 15 U.S.C. § 25 (same regarding "violations of this Act").  And as the case's name makes apparent, *National City Lines* was an action brought *by the United Sates*.

---

[4] Not only is *Cory* not an antitrust case, it quotes Justice Jackson's concurring opinion, which explicitly reaches its conclusion via a "different route" than the majority opinion.  *Nat'l City Lines*, 334 U.S. at 597.

334 U.S. at 575 (majority opinion).  Thus, the Court concludes that Justice Jackson's view was that these other provisions permitted the United States to serve (and courts to exercise jurisdiction over) defendants not within the reach of Section 22.

The Court further concludes that *Cory*'s endorsement of Justice Jackson's view stands only for the proposition that when an "action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice" when explicitly authorized by Congress.  *Cory*, 468 F.3d at 1231.  The Court sees no such authorization in Section 22, and therefore concludes that ends-of-justice analysis would be inappropriate.

> b.    *Colorado's Long-arm Statute*

In absence of a more specific authorization of service, the Court is referred to Colorado's long-arm statute by Federal Rule of Procedure 4(k)(1)(A).  *See Trujillo*, 465 F.3d at 1217.

The Colorado long-arm statute, Colorado Revised Statutes § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the United States Constitution, so the jurisdictional analysis in this case reduces to a single inquiry of whether jurisdiction offends due process.  *See Job Store, Inc. v. Job Store of Loveland Ohio, LLC*, 2016 WL 9735786, at *2 (D. Colo. Sep. 7, 2016) (citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)); *see also Tyrell v. Lexidan, Inc.*, 2020 WL 996877, at *3 (D. Colo. Mar. 2, 2020) (noting that there is no need for a long-arm statutory analysis separate from the due process inquiry required by *International Shoe* and its progeny).  Personal jurisdiction comports with due process where a defendant

has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

This analysis is two-fold. First, the Court must determine whether the Individual and Entity Defendants have such minimum contacts with Colorado that they "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the Individual and Entity Defendants purposefully directed their activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether Plaintiffs' claim arises out of or results from "actions by . . . [the defendant] . . . that create a substantial connection with the forum State," *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if the Individual and Entity Defendants' actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over them offends "traditional notions of fair play and substantial justice." *Job Store*, 2016 WL 9735786, at *5 (citation omitted). This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over them is "reasonable" in light of the circumstances of the case. *Id.*

For the following reasons, the Court finds that the Individual and Entity Defendants have sufficient minimum contacts with Colorado required for the Court to exercise personal jurisdiction over them.

(i)      Purposeful Availment[5]

The Individual and Entity Defendants argue that they have, at most, a fortuitous and incidental connection to Colorado.  (ECF No. 90 at 8.)  They argue that the only contact they have is the annual participation in the Stock Show, which AHCA "assists and sponsors."  (*Id.* at 2, 6–8.)  They argue that because they did not choose the location of the Stock Show, they did not purposefully avail themselves of the privilege of doing business in Colorado.  (*Id.* at 8.)

Plaintiffs argue that the Individual and Entity Defendants' contacts go beyond mere participation in the Stock Show.  (ECF No. 91 at 5–8.)  They emphasize the Individual Defendants' leadership roles in the AHCA and how they leveraged those roles to damage Shat Acre's business to the benefit of their own businesses, the Entity Defendants.  Specifically, they argue based on Steward's attached affidavit that the Individual Defendants defamed Plaintiffs at an in-person AHCA Governance Committee meeting, held in Denver in 2018, by using their power within the AHCA to falsely allege complaints about IAFE Code violations by Plaintiffs had been received.  (*Id.* at 6; ECF No. 91-1 ¶¶ 2–4.)

The Individual and Entity Defendants are all members of the AHCA, of which the Individual Defendants are leading and influential members.  (¶¶ 11–14.)  While the Tenth Circuit has held that attending tradeshows in locations not selected by a defendant is insufficient contact to confer personal jurisdiction, *C5 Medical Werks, LLC*

---

[5] "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state.  In all events, the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."  *Dudnikov*, 514 F.3d at 1070 (citations omitted).

*v. CeramTec GMBH*, 937 F.3d 1319, 1333–34 (10th Cir. 2019), the Individual Defendants not only attend the Stock Show—they are leaders in an organization that admittedly "sponsors" it.  (ECF No. 90 at 2.)  Further, the Individual Defendants' leadership of AHCA appears to have brought them to Colorado over the course of several years, in addition to the annual trips to the Stock Show.  (*See* ECF No. 1 ¶ 137; ECF No. 91-1 ¶¶ 2–4.)  While it is presumably true that the Individual Defendants did not choose the location of the principal place of business of the AHCA, it can be reasonably inferred that they purposefully pursued leadership positions to advance their—and the Entity Defendants'—financial interests.  (*See generally* ECF No. 1.)  And Plaintiffs explicitly allege that the Individual Defendants utilized the 2018 board meeting in Denver to advance those financial interests by undermining Plaintiffs' reputation.  (ECF No. 91 at 6; ECF No. 91-1 ¶¶ 2–4.)  The Court finds these allegations sufficient to conclude that Individual and Entity Defendants purposefully availed themselves of the privilege of doing business in Colorado.

                (ii)      Relationship Between the Claim and Forum Contacts

The Individual and Entity Defendants' argument with respect to the relationship between Colorado and their alleged contacts is sparse.  They merely argue that "no allegations directly point to legally wrongful acts occurring in or giving rise to injuries within Colorado."  (ECF No. 90 at 8.)  Plaintiffs' argument on this point is nonexistent.  (*See* ECF No. 91 at 6–7.)

The Tenth Circuit has explained that the "arising out of" requirement is causal in nature.  *Dudnikov*, 514 F.3d 1078–79.  The Tenth Circuit did not decide whether a but-for or proximate cause standard was required, however, because it found either standard was satisfied in that case.  *Id.* at 1079.  Plaintiffs allege that the Individual

Defendants used their influence within the AHCA—an organization of which the Entity Defendants are also members—to levy false allegations that Plaintiffs had committed IAFE Code and other ethics violations.  (ECF No. 91-1 ¶¶ 2–3.)  Plaintiffs allege that these false allegations, the resulting ethics investigation, and the leak of that investigation's existence to other AHCA members resulted in a 30% reduction in their business in 2018.  (*See* ¶¶ 228, 232.)  Further, Plaintiffs allege that no AHCA member bought any cattle from them during 2018 and 2019, despite having made such sales in the past.  (¶¶ 233, 288.)  The Court finds that a reasonable factfinder could infer that the Individual Defendants acted not only in their personal capacities, but also in their capacities as representatives of their businesses, in order to sabotage Plaintiffs' business and benefit themselves.  On this basis, a reasonable factfinder could conclude that the Individual and Entity Defendants' contacts with Colorado are the proximate cause of Plaintiffs' alleged injuries.

Because the Court finds Plaintiffs have satisfied the more exacting proximate cause standard, the Court need not decide whether but for causation suffices. Accordingly, the Court finds that Plaintiffs have made a *prima facie* showing of the Individual and Entity Defendants minimum contacts.

(iii)     Traditional Notions of Fair Play and Substantial Justice

Though the Court has determined that the Individual and Entity Defendants have purposefully availed themselves of the privilege of doing business in Colorado and Plaintiffs' antitrust claim arose out of those contacts, the Court must still decline jurisdiction if exercising it would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  In evaluating whether such notions are offended, the Court must be "cognizant of the fact that, with minimum contacts established, it is

incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Dudnikov*, 514 F.3d at 1080 (quoting *Pro Axess*, 428 F.3d at 1280).

The traditional factors for this inquiry are:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998). The "weaker the plaintiff's showing on minimum contacts the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  *Pro Axess*, 428 F.3d at 1280 (quoting *OMI*, 149 F.3d at 1095) (alteration omitted)).  The Individual and Entity Defendants argue each factor counsels against exercising jurisdiction.  (ECF No. 90 at 9–10.)

With respect to the first factor, the Individual and Entity Defendants argue they lack property or business connections to Colorado and would therefore be substantially burdened by litigating in Colorado.  (ECF No. 90 at 9.)  While this factor is not dispositive, it is "of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous."  *OMI*, 149 F.3d at 1096.  Plaintiffs respond that "travel inconvenience" is not constitutionally significant.  (ECF No. 91 at 9 (citing *GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1198 (D. Colo. 2019)).)

With respect to the second factor, the Individual and Entity Defendants argue that Colorado "does not have a strong interest in adjudicating Plaintiffs' claims against the

Non-Colorado Defendants, as no parties are citizens, and Plaintiffs' alleged injuries did not occur in Colorado."  (ECF No. 90 at 9.)  Plaintiffs respond by referencing AHCA polices that require disputes between it and its members to be submitted to mediation in Adams County, Colorado and by stating that Colorado has an interest in ensuring entities operating within its territory are acting lawfully.  (ECF No. 91 at 9.)

With respect to the third factor, the Individual and Entity Defendants argue that Plaintiffs fail to assert that Colorado is a convenient forum or that they would be less likely to recover their alleged damages in another forum.  (ECF No. 90 at 9.)  Plaintiffs respond that when they attempted to litigate these claims in another forum (the District of Vermont), the action was dismissed for lack of personal jurisdiction when the court in Vermont determined that Colorado was the proper venue.[6]  (ECF No 91 at 9–10.)  They argue that it would hardly serve their interest in a convenient and effective venue to dismiss the Individual and Entity Defendants from this action.  (*Id.* at 10.)

With respect to the fourth factor, the Individual and Entity Defendants argue that while dismissing them from this action would result in piecemeal litigation, the "meat and potatoes" of the allegations in the Complaint concern conduct relating to "personal animosity" and that witnesses and evidence are spread across the country.  (ECF No. 90 at 10.)  Plaintiffs respond by repeating their argument that Colorado has an interest in ensuring that entities operating within its geographic borders are complying with the law.  (ECF No. 91 at 10.)  They further argue that litigating this dispute with all parties— who share counsel—would preserve judicial and party resources.  (*Id.* at 10–11.)

---

[6] Plaintiffs failed to inform the Court that the Individual and Entity Defendants were not parties in the case dismissed by the District of Vermont.  *See Shat Acres Highland Cattle, LLC v. American Highland Cattle Association*, 2021 WL 2125357 (D. Vt. Jan. 13, 2021).

With respect to the fifth factor, the Individual and Entity Defendants argue that "the alleged conduct took place in multiple other forums and had affects in other forums; thus, effect on social policy of a resolution is minimal in Colorado and likely greater for other states."  (ECF No. 90 at 9–10.)  Plaintiffs offer no argument on the fifth factor.  (*See* ECF No. 91 at 11.)

The Court has considered the parties' arguments and concludes that the Individual and Entity Defendants have failed to present the "compelling" case necessary to overcome Plaintiffs' *prima facie* showing of minimum contacts.  Therefore, the Court concludes it has personal jurisdiction over the Individual and Entity Defendants with respect to Plaintiffs' antitrust claim.

      2.    <u>State Law Claims</u>

Plaintiffs also bring numerous claims under state law.  (ECF No. 1 ¶¶ 292–346, 353–357.)  Plaintiffs argue that because the Court has personal jurisdiction over the Individual and Entity Defendants with respect to their antitrust claim, and the state law claims arise out of the same facts, the Court can exercise pendant personal jurisdiction over the state law claims.  (ECF No. 91 at 4 (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002).)  Because in this Order the Court dismisses Plaintiffs' only claim arising from federal law and declines supplemental subject-matter jurisdiction over the remaining claims, *see infra* Part B.1, the Court does not analyze whether exercising pendant personal jurisdiction over those claims would be appropriate.

**B.    Failure to State a Claim Upon Which Relief Can Be Granted**

      1.    <u>Antitrust Claim</u>

Plaintiffs bring their antitrust claim under Section 4 of the Clayton Act, codified as 15 U.S.C. § 15, which grants a cause of action for private parties injured in business or

property by a violation of Section 1 of the Sherman Act.  (ECF No. 1 ¶ 352; *Gregory v. Fort Briger Rendezvous Ass'n*, 448 F.3d 1195, 1200 (10th Cir. 2006).)  Section 1 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared illegal."  15 U.S.C. § 1.  Further, Section 1 has been interpreted to proscribe only "unreasonable" restraints on trade.  *See Twombly*, 550 U.S. at 553.  Therefore, to plausibly allege their antitrust claim, Plaintiffs must plead the following elements: (1) Defendants entered into a contract, combination, or conspiracy; (2) the contract, combination, or conspiracy unreasonably restrained trade in the relevant market; and (3) that this restraint injured their property or business.

Defendants focus their argument on the first element.  (ECF No. 90 at 12–14.) They argue that the facts alleged in the complaint at most suggest parallel conduct, which is insufficient to plead a Section 1 violation.  (*Id.*)  Indeed, "[w]ithout more, parallel conduct does not suggest conspiracy."  *Twombly*, 550 U.S. at 556.  As such, they argue there must be allegations that, if true, would "tend to exclude the possibility of independent action."  (ECF No. 90 at 13 (quoting *Twombly*, 550 U.S. at 554).) Defendants argue that Plaintiffs have failed to allege with any detail the circumstances of the alleged agreement, instead relying on conclusory allegations and unwarranted legal conclusions.  (*Id.*)

Plaintiffs respond that they "do plead facts that detail the time, place, manner and motives of Defendants sufficient to show a concert in action among Defendants."  (ECF No. 91 at 13.)  They then block quote several paragraphs from the Complaint primarily detailing events from 2015, and an ethics investigation that followed.  (*Id.* at 13–15.)

Only three of the quoted paragraphs concern the 2018 events Plaintiffs assert form the basis of their antitrust claim.  (*Id.*)  Those paragraphs assert that the events in 2018 were "similar to the 2015" events.  (*Id.* at 15 (quoting ¶¶ 229).)  Plaintiffs also cite *Gregory*, a case where the Tenth Circuit described trade organizations in which members compete horizontally as traditional "objects of antitrust scrutiny."  (*Id.* at 15–16 (quoting *Gregory*, 448 F.3d at 1203).)

The Court first notes that it does not agree with Defendants that the actions taking place in 2015 are irrelevant simply because any cause of action they may have given rise to is time-barred.  (ECF No. 91 at 5 (citing 15 U.S.C. 15(b)).)  Nor does the Court agree that footnote 10 in *Gregory* stands for the proposition that Defendants' motives are irrelevant in all contexts.  (*See id.* at 6.)  In fact, footnote 10 directly refutes this assertion, stating that when analyzing whether an action is a *per se* restraint on trade, motive should not be considered; but when using the rule of reason test, whether the alleged coconspirators' justification for an action is pretextual is "properly considered."  *Gregory*, 448 F.3d at 1205 n.10.

Upon consideration of the parties' arguments, the Court concludes that Plaintiffs have failed to allege facts that plausibly suggest (rather than being merely consistent with) a conspiracy.  *See Twombly*, 550 U.S. at 557.  It is clear to the Court that the Individual Defendants had a dispute with Plaintiffs, and Plaintiffs clearly allege that the Individual Defendants used their positions of power to injure Plaintiffs' standing within the AHCA.  (*E.g.*, ECF No. 1 ¶¶ 220–33.)  What the Court does *not* find in the Complaint, however, is the "something more" courts require that tends to rule out the entirely consistent possibility that the Defendants acted independently of one another

because they simply disliked Plaintiffs. *Twombly*, 550 U.S. at 560. If that alternate possibility is in fact what occurred, Defendants' conduct may still be actionable—just not under federal antitrust law.

The key legal issue addressed by *Gregory* is whether the members of a trade organization in which members compete horizontally, other than an agricultural cooperative, are separate actors for purposes of Section 1. 448 F.3d at 1200–03. The Tenth Circuit explained that the district court had erred when it concluded that the members of the relevant trade organization were not separate actors. *Id.* Multiplicity of actors is not at issue in this action, and in any event, the allegations in the Complaint are factually distinguishable from *Gregory*.

In that case, personal animosities resulted in a unanimous board vote to deny the plaintiffs access to a tradeshow at which they could sell their goods and at which they had previously held a premium location. *Id.* at 1198–99. While Plaintiffs argue that the Individual Defendants' personal animosity caused them to levy the false ethics allegations, no AHCA committee voted to take action against the Plaintiffs in 2018. (*See* ECF No. 1 ¶¶ 221 ("In fact, the Board members represented that the Board . . . had not authorized any investigation of Plaintiffs and had not convened an Ethics Committee to do so.").) Rather, Plaintiffs allege that unidentified "individuals" undertook an investigation on their own (*id.* ¶ 222) and that leaks of the allegations and unauthorized investigation by unnamed AHCA members injured their reputation (*id.* ¶ 228). In the Court's view, if the "conscious parallelism" of AT&T's successor "Baby Bells" refusing to compete in each other's formerly monopolized regions was insufficient to allege a conspiracy, Plaintiffs' allegations amounting to Defendants each taking steps

to harm their reputation is also insufficient.  *Twombly*, 550 U.S. at 549–52.

The Court concludes that Plaintiffs have failed to state an antitrust claim against Defendants.  The Court further concludes that though Plaintiffs have failed to state a claim, they may in an amended complaint be able to allege facts that do tend to rule out mere parallel conduct; therefore, the Court will dismiss this claim without prejudice.

2.      <u>State Law Claims</u>

Because the Plaintiffs' antitrust claim arises from the same set of operative facts as his state-law claims, the Court has supplemental jurisdiction over those claims.  28 U.S.C. § 1367.

But this case is now in a fundamentally altered procedural posture because the Court is dismissing Plaintiffs' only federal claim.  Federal supplemental jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Given this altered procedural posture, "the values of judicial economy, convenience, fairness, and comity" weigh in favor of not exercising supplemental jurisdiction over the state claims.  *Carnegie-Mellon Univ.*, 484 U.S. at 350.

Therefore, Plaintiffs' state law claims are also dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated above, the Court ORDERS:

1. Defendants' Amended Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2), (b)(6) (ECF No. 90) is DENIED IN PART and GRANTED IN PART as set forth above;

2. Plaintiffs' Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE;

3. If they elect to do so, Plaintiffs are granted leave to file, by no later than **November 20, 2023,** a motion for leave to file an amended complaint that cures the pleading deficiencies identified in this Order; and

4. The stay of discovery conditionally entered by United States Magistrate Judge Kato S. Crews (ECF No. 89) is hereby LIFTED.

Dated this 26th day of October, 2023.

BY THE COURT:

William J. Martinez
Senior United States District Judge